## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

JEFFREY D. JONES,                    )
                                     )
       **Plaintiff,**          )
                                     )
v.                                   )    **Case No. 24-CV-392-MTS**
                                     )
CITY OF SAPULPA, et al.,             )
                                     )
       **Defendants.**         )

### OPINION AND ORDER

Before the Court is Defendant Cady Byrnes' Motion to Dismiss Amended Complaint and Brief in Support. (Docket No. 23). After considering the parties' briefing, relevant case law, and arguments by counsel at the hearing, the Court hereby **GRANTS** Defendant Byrnes' Motion to Dismiss Amended Complaint and Brief in Support.

### Background and Procedural History

Plaintiff Jeffrey D. Jones ("Plaintiff") originally filed suit against Defendants City of Sapulpa, Sapulpa Police Department, and unidentified police officers Jane Doe and John Doe, on August 27, 2024. (Docket No. 1). Plaintiff alleged that Defendants violated his Fourth Amendment rights, as applied through 42 U.S.C. § 1983, by subjecting him to unlawful seizure, excessive detention, malicious prosecution, and civil conspiracy. *Id.* at 6–10. After learning Defendant Jane Doe's identity, Plaintiff sought and received leave to file his Amended Complaint.[1]

---

[1] Plaintiff claims Defendants violated his Fourteenth Amendment rights in Claims 1 and 2, unreasonable seizure and false arrest/malicious prosecution, while Claims 3 and 4, excessive detention and civil conspiracy, allege violations of his Fourth Amendment rights. (Docket No. 17). However, pretrial deprivations of liberty are governed by the Fourth Amendment, not the substantive due process standards of the Fourteenth Amendment. *Taylor v. Meacham*, 82 F.3d 1556, 1560 (10th Cir. 1996) (citing *Albright v. Oliver*, 510 U.S. 266 (1994)). As such, Plaintiff's claims will be addressed in the Fourth Amendment context only.

(Docket No. 17).  Plaintiff now asserts claims of unlawful seizure, excessive detention, malicious prosecution, false arrest, and civil conspiracy against Defendants[2] City of Sapulpa, Sapulpa Police Department, and Sapulpa Police Officer Cady Byrnes (hereinafter, "Defendant Byrnes"), in both her individual and official capacities.[3]  *Id.*

According to the Amended Complaint, John Doe, an off-duty Sapulpa Police Department officer, followed Plaintiff to his place of employment following a traffic incident involving Plaintiff, John Doe, and other unknown motorists on December 5, 2022.  *Id.* at 3–4.  After Plaintiff arrived at his place of work and went inside, Defendant Byrnes, an on-duty Sapulpa Police Department officer, arrived and approached Plaintiff's vehicle.  *Id.* at 4.  Plaintiff was notified of Defendant Byrnes' presence and voluntarily met her outside.  *Id.*  Defendant Byrnes then asked Plaintiff if he had been "speeding or driving erratically[.]"  (Docket No. 17).  Plaintiff denied speeding but stated that he had swerved into another lane of traffic to avoid an accident or collision.  *Id.* at 4.  After further discussion regarding the traffic incident, Defendant Byrnes allegedly unreasonably seized and excessively detained Plaintiff by ordering him "to freeze" for more than an hour[4] while she ran his driver's license and plate number.  *Id.* at 5.  She then, without personally witnessing the incident herself, swore to and issued Plaintiff tickets for driving while under

---

[2] On April 9, 2025, the Court dismissed Defendants City of Sapulpa and Sapulpa Police Department pursuant to Federal Rule of Civil Procedure 41(b).  (*See* Docket No. 34).

[3] "Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'"  *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)).  Therefore, because the Court previously dismissed Defendants City of Sapulpa and Sapulpa Police Department, Plaintiff's remaining claims against Defendant Byrnes must be brought against her in her individual capacity only.

[4] The Court notes that, while Plaintiff initially states he was seized for more than an hour, he later characterizes the alleged seizure and detention as lasting for "the better part of an hour or more." (Docket No. 17 at 5, 9).

suspension[5] and reckless driving. *Id.* According to Plaintiff, the tickets constituted a false arrest, which the District Attorney of Sapulpa then enforced by maliciously prosecuting him, resulting in Plaintiff being on probation for six months. *Id.* at 6. Plaintiff seeks "attorney's fees, court costs, emotional pain and suffering damages, and punitive damages . . . and an expungement of his driving record[.]" *Id.* at 12–13.

On January 14, 2025, Defendant Byrnes filed her Motion to Dismiss Amended Complaint and Brief in Support. (Docket No. 23). Plaintiff filed his Response on February 4, 2025, (Docket No. 27), and Defendant Byrnes filed her Reply on February 17, 2025 (Docket No. 29). The Court then held a hearing on April 3, 2025, addressing multiple motions, including Defendant Byrnes' Motion to Dismiss.[6] (Docket Nos. 30, 31, 33). Plaintiff and Defendants' counsel appeared. As such, the instant matter is ripe for consideration.

---

[5] Plaintiff claims that "[t]he Oklahoma Department of Public Safety *erroneously* requested that Florida suspend [his] driver's license for an alleged failure to pay a parking ticket." (Docket No. 17 at 5) (emphasis original). Plaintiff allegedly paid the ticket timely, and the licensure suspension was then "corrected immediately." *Id.*

[6] Plaintiff conceded at the hearing that he paid the alleged "sham-ticket" and was subsequently placed on probation, which he successfully completed. (Docket No. 33). Therefore, he cannot succeed on his malicious prosecution claim. *See Shrum v. Cooke*, 60 F.4th 1304, 1310 (10th Cir. 2023) ("A § 1983 malicious prosecution claim includes five elements . . . : (1) the defendant caused the plaintiff's continued confinement or prosecution; (2) *the original action terminated in favor of the plaintiff*; (3) there was no probable cause to support the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages.") (emphasis original). Because Plaintiff conceded that the original action of being issued citations did not terminate in his favor, the Court will not address further argument regarding Plaintiff's malicious prosecution claim.

3

**Legal Standard**

Through the instant Motion, Defendant Byrnes seeks dismissal of Plaintiff's § 1983 claims for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine,[7] pursuant to Federal Rule of Civil Procedure 12(b)(1). "Rule 12(b)(1) motions generally take one of two forms. The moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004) (quoting *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003)).

Defendant Byrnes also seeks dismissal of Plaintiff's claims for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United States Supreme Court set forth the plausibility standard applicable to a motion to dismiss filed under Rule 12(b)(6). *Bell Atlantic* stands for the summarized proposition that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl.*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl.*, 550 U.S. at 556); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (interpreting the plausibility standard as referring "to the scope of the allegations in the complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the

---

[7] The *Rooker-Feldman* doctrine is based upon the Supreme Court's decisions in *Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923), and *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983).

plaintiffs have not nudged their claims across the line from conceivable to plausible.") (quotation omitted). However, a court need not accept as true allegations that are conclusory in nature. *Id.* at 678 ("[T]he tenet that a court must accept as true all the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (citing *Bell Atl.*, 550 U.S. at 555).

## <u>Discussion</u>

### A. *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine prohibits "federal courts, with the notable exception of the United States Supreme Court, from exercising jurisdiction over 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Graff v. Aberdeen Enters., II, Inc.*, 65 F.4th 500, 514 (10th Cir. 2023) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). *Rooker-Feldman* is related to "Congress's decision to vest federal appellate jurisdiction over state court judgments exclusively in the United States Supreme Court." *Id.* (citing *Exxon*, 544 U.S. at 283). *Rooker-Feldman*'s "jurisdictional bar applies when '(1) the plaintiff lost in state court, (2) the state court judgment caused the plaintiff's injuries, (3) the state court rendered judgment before the plaintiff filed the federal claim, and (4) the plaintiff is asking the district court to review and reject the state court judgment.'" *Id.* (quoting *Bruce v. City & Cty. of Denver*, 57 F.4th 738, 746 (10th Cir. 2023)). "When these predicates are present, lower federal courts lack subject matter jurisdiction." *Id.* at 514–15 (citing *Lance v. Dennis*, 546 U.S. 459, 464 (2006)).

However, *Rooker-Feldman*'s jurisdictional bar is described as "narrow" and "claim specific." *See Lance*, 546 U.S. at 464; *Flanders v. Lawrence (In re Flanders)*, 657 F. App'x 808,

814 (10th Cir. 2016).  It applies when "a federal action . . . tries to modify or set aside a state-court judgment because the state proceedings should not have led to that judgment."  *Mayotte v. U.S. Bank Nat'l Ass'n*, 880 F.3d 1169, 1174 (10th Cir. 2018) (citing *Exxon*, 544 U.S. at 291).  But *Rooker-Feldman* "does not deprive a federal court of jurisdiction to hear a claim just because it could result in a judgment inconsistent with a state-court judgment.  There is no jurisdictional bar to litigating the same dispute on the same facts that led to the state judgment[.]"  *Id.* at 1174–75 (citations and quotation omitted); *see also Bolden v. City of Topeka*, 441 F.3d 1129, 1145 (10th Cir. 2006) ("*Rooker-Feldman* does not bar federal-court claims that would be identical even had there been no state-court judgment; that is, claims that do not rest on any allegation concerning the state-court proceedings or judgment.").  Thus, "for the doctrine to apply, 'an element of the claim must be that the state court wrongfully entered its judgment.'"  *Graff*, 65 F.4th at 515 (quoting *Campbell v. City of Spencer*, 682 F.3d 1278, 1283 (10th Cir. 2012)).

Defendant Byrnes asserts *Rooker-Feldman* applies to Plaintiff's federal claims because part of the relief he seeks includes the expungement of the traffic citations from his driving record. (Docket No. 23 at 12–13).  She contends this not only "challenges the legitimacy and adjudication of [Plaintiff's] municipal traffic citations[,]" but "is a direct attack on the municipal court's judgment because of his claim—and request for an expungement of his record—that the judgment was wrong."  *Id.*

The claims alleged by Plaintiff in the Amended Complaint include claims for unreasonable seizure, excessive detention, false arrest, and civil conspiracy, all stemming from an investigative stop of Plaintiff by Defendant Byrnes based upon a report of erratic driving from a fellow off-duty officer for the Sapulpa Police Department.  (Docket No. 17 at 6–12).  Specifically, Plaintiff's claim for unreasonable seizure centers on Defendant Byrnes directing Plaintiff "to freeze after not having

observed the alleged traffic violation at-issue" and without "any reason to believe [he] had just committed a felony or was about to commit a felony." *Id.* at 6. Relatedly, Plaintiff claims Defendant Byrnes "used excessive detention when she took the better part of an hour or more to run a simple license check and to issue a standard two-page citation." *Id.* at 9. Further, Plaintiff claims he "suffered a false arrest in the form of a citation," and his civil conspiracy claim includes allegations that Defendant Byrnes and other unidentified officers present during the investigation "verbally conspired" to unlawfully seize and excessively detain Plaintiff, while also conspiring "to lie, and falsely issue a sham criminal summons[.]" *Id.* at 9, 10, 11. All of Plaintiff's claims include a prayer for relief requesting, in part, compensatory and punitive damages as well as "an expungement of his driving record." *Id.* at 12–13.

The Court agrees with Defendant Byrnes that to the extent Plaintiff seeks relief in the form of expungement of the traffic citations from his driving record, granting such relief would require the Court to review and possibly reject the citations issued to Plaintiff, which it cannot do under *Rooker-Feldman*. However, as outlined above, Plaintiff seeks additional relief from Defendant Byrnes, including damages, and advised in his response to Defendant Byrnes' Motion (Docket No. 27 at 2), and at the hearing when questioned by the Court, that he no longer seeks expungement of the citations from his record. Without the requested relief of expungement, Plaintiff's federal claims for unreasonable seizure, false arrest, excessive detention, and civil conspiracy do not require the Court to review or reject the municipal court judgment. The injuries alleged by Plaintiff are connected to the actions taken by Defendant Byrnes during the investigatory stop and not to injuries caused by the municipal court judgment. Accordingly, the Court declines to dismiss Plaintiff's claims against Defendant Byrnes under the *Rooker-Feldman* doctrine.

**B. Bar under *Heck v. Humphrey***

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court explained that "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of h[is] conviction or sentence[.]" *Id.* at 487; *see also Torres v. Madrid*, 60 F.4th 596, 600 (10th Cir. 2023). "In other words, a civil claim is barred if it seeks to retry the same facts and legal issues from a prior case where the civil plaintiff has already been convicted beyond a reasonable doubt as a criminal defendant." *St. George v. City of Lakewood*, No. 22-1333, 2024 WL 3687780, at *3 (10th Cir. Aug. 7, 2024); *see also Crothers v. Carr*, No. 23-8014, 2025 WL 1122681, at *9 (10th Cir. Apr. 16, 2025) ("Under *Heck*, an individual who was previously convicted of an offense may not bring a § 1983 damages claim challenging conduct related to their prosecution or conviction if succeeding on their claim would necessarily imply that their conviction is invalid.") (citing *Heck*, 512 U.S. at 489–90). If that is the case, "the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated."[8] *Heck*, 512 U.S. at 487. The Supreme Court, however, clarified that "if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." *Id.*

Defendant Byrnes argues Plaintiff's claims are barred under *Heck* because a judgment in favor of Plaintiff on his § 1983 claims will "undermine the validity of his municipal conviction

---

[8] This requirement helps maintain the balance between § 1983 and the federal habeas corpus statute, 28 U.S.C. § 2254. *See Graff*, 65 F.4th at 520 (citing *Butler v. Compton*, 482 F.3d 1277, 1279 (10th Cir. 2007) ("The purpose behind *Heck* is to prevent litigants from using a § 1983 action, with its more lenient pleading rules, to challenge their conviction or sentence without complying with the more stringent exhaustion requirements for habeas actions.")).

arising out of the issued citations." (Docket No. 23 at 14). Her motion, however, primarily relies upon Plaintiff's inability to show that his convictions have been invalidated. *Id.* at 14–15. In support, Defendant Byrnes points to allegations in Plaintiff's Amended Complaint demonstrating that after the citations were issued, he was prosecuted for the violations, received punishment, and now seeks relief in the form of expungement of his driving record, all indicators that he was not exonerated. *Id.* at 15 (citing Docket No. 17 at 6, 8, 12–13). Further, she asserts there is no record of any appeal by Plaintiff. *Id.* at 15–16.

Before determining if Plaintiff's convictions have been invalidated, the Court must first determine whether a judgment on Plaintiff's § 1983 claims would "necessarily imply the invalidity of h[is] conviction or sentence." *Heck*, 512 U.S. at 487. Plaintiff's § 1983 claims are based upon alleged Fourth Amendment violations which occurred during an investigative stop and detention that resulted in Defendant Byrnes issuing Plaintiff two citations—one for reckless driving and another for driving with a suspended license. (Docket No. 17 at 5). Plaintiff's claims for unreasonable seizure, excessive detention, and civil conspiracy do not implicate the invalidity of the offenses for which Plaintiff has been convicted.[9] *See Butler*, 482 F.3d at 1279 ("[A] § 1983 action implicates *Heck* only as it reaches to the conviction that it would be directly invalidating."). The issues of whether Plaintiff was unreasonably seized (Docket No. 17 at 6–8), excessively detained (*id.* at 9), or conspired against by officers during the investigatory stop (*id.* at 10–12), were not litigated in the municipal court proceeding and do not appear to implicate the invalidity

---

[9] The example referenced in *Heck* that would invalidate the defendant's conviction involved the crime of resisting arrest. 512 U.S. at 486 n.6. The Supreme Court noted that even though the § 1983 action "d[id] not seek damages directly attributable to conviction or confinement[,]" it would imply the conviction or sentence for resisting arrest was wrongful if the defendant sought damages under § 1983 "for violation of his Fourth Amendment right to be free from unreasonable seizures . . . [because] he would have to negate an element of the offense of which he has been convicted." *Id.*

of Plaintiff's convictions for reckless driving and driving with a suspended license.  Moreover, as previously discussed under Defendant Byrnes' *Rooker-Feldman* argument, Plaintiff no longer seeks expungement of the citations from his record.

While the Amended Complaint is less clear as to Plaintiff's § 1983 claim for false arrest, such claims "generally do not implicate *Heck*, because improprieties in arrest typically do not undermine the validity of the ensuing conviction." *Jackson v. Loftis*, 189 F. App'x 775, 779 n.1 (10th Cir. 2006).  Nevertheless, because *Heck* bears on a plaintiff's ability to state a claim and is not a jurisdictional bar to suit, the Court may address the merits of Plaintiff's § 1983 claims, *i.e.*, whether Defendant Byrnes is entitled to qualified immunity, instead of definitively deciding if Plaintiff's claims are barred by *Heck*.  *See Crothers*, 2025 WL 1122681, at *10 ("[W]e conclude that *Heck* does not present a jurisdictional bar. The district court was therefore free—as are we— to bypass the *Heck* issue and instead address the merits of Crother's claims."); *see also Marshall v. Morton*, 421 F. App'x 832, 836 n.4 (10th Cir. 2011) (finding *Heck* is not jurisdictional and addressing the merits of plaintiff's claims rather than applying *Heck* to the claims).

### C.  Qualified Immunity Doctrine

Defendant Byrnes also seeks dismissal of Plaintiff's claims on the basis of qualified immunity.  (Docket No. 23 at 8–15, 18–19).  "Individual defendants named in a § 1983 action may raise a defense of qualified immunity," *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 459 (10th Cir. 2013), which shields public officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Generally, "when a defendant asserts qualified immunity, the plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right

was clearly established at the time of the defendant's unlawful conduct." *Cillo*, 739 F.3d at 460. Thus, "[t]o survive a motion to dismiss based on qualified immunity, the plaintiff must allege sufficient facts that show—when taken as true—the defendant plausibly violated his constitutional rights, which were clearly established at the time of violation." *Schwartz v. Booker*, 702 F.3d 573, 579 (10th Cir. 2012).

A court has discretion regarding the order with which to consider the two-part inquiry. *Cox v. Glanz*, 800 F.3d 1231, 1246–47 (10th Cir. 2015) (citations omitted). If a plaintiff fails to make either showing, then a court must recognize the defendant's qualified immunity. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).

    *1. Whether Plaintiff Plausibly Alleged Violations of His Constitutional Rights*

        *a. Unreasonable Seizure and Excessive Detention Claims*

"'[The Tenth Circuit] has recognized three types of police-citizen encounters: (1) consensual encounters which do not implicate the Fourth Amendment; (2) investigative detentions'—*Terry* stops—'which are Fourth Amendment seizures of limited scope and duration and must be supported by a reasonable suspicion of criminal activity; and (3) arrests, the most intrusive of Fourth Amendment seizures and reasonable only if supported by probable cause.'" *Hemry v. Ross*, 62 F.4th 1248, 1253 (10th Cir. 2023) (quoting *United States v. Hammond*, 890 F.3d 901, 904 (10th Cir. 2018)).

A court must make two inquiries when analyzing the constitutionality of an investigatory stop. First, a court must determine "'whether the officer's action was justified at its inception[.]'" *Sandberg v. Englewood*, 727 F. App'x 950, 957 (10th Cir. 2018) (quoting *Terry v. Ohio*, 392 U.S. 1, 20 (1968)). For an investigatory stop to be justified at inception, the officer must have a "reasonable suspicion supported by articulable facts that criminal activity may be afoot." *Hemry*,

62 F.4th at 1254 (quoting *Cortez v. McCauley*, 478 F.3d 1108, 1115 (10th Cir. 2007)).    The reasonable suspicion standard does not require that the officer "rule out the possibility of innocent conduct, or even have evidence suggesting a fair probability of criminal activity." *United States v. Pettit*, 785 F.3d 1374, 1379 (10th Cir. 2015).    Rather, reasonable suspicion "requires considerably less than proof of wrongdoing by a preponderance of the evidence, but something more than an inchoate and unparticularized suspicion or hunch." *United States v. Melendez-Garcia*, 28 F.3d 1046, 1051 (10th Cir. 1994).    However, "[o]nce reasonable suspicion has been dispelled, '[e]ven a very brief extension of the detention without consent or reasonable suspicion violates the Fourth Amendment.'" *Sandberg*, 727 F. App'x at 957 (quoting *United States v. De La Cruz*, 703 F.3d 1193, 1197 (10th Cir. 2013)).

Second, if a court finds the initial stop justified, it must then determine "whether [the officer's action] was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 20.  In determining whether the officer's actions remained within the scope of the stop, a court must consider "the law enforcement purposes to be served by the stop as well as the time reasonably needed to effectuate those purposes." *United States v. Sharpe*, 470 U.S. 675, 685 (1985).  The length of a stop is evaluated using "common sense and ordinary human experience."[10]  *Id.*  Importantly, "an evaluation of the reasonableness of a detention's length is not an exercise in counting minutes." *Hemry*, 62 F.4th at 1256; *see United States v. Young*, 99 F.4th 1136 (10th Cir. 2023) (finding that the officer's extension of the length of the detention to approximately thirty minutes in order to check for outstanding warrants was

---

[10] Put differently, the length of a stop is evaluated using a "reasonable person" standard. *United States v. Rosborough*, 366 F.3d 1145, 1150 (10th Cir. 2004) ("Whether a search exceeds the scope and duration of consent is a question of fact, reviewable for clear error, which turns on what a reasonable person would have understood to be the scope and duration of his consent under the circumstances.").

reasonable); *cf. United States v. Scales*, 903 F.2d 765, 769 (10th Cir. 1990) (seven-hour delay rendered seizure unreasonable in the absence of probable cause). "The key inquiry for Fourth Amendment purposes is not simply how much time elapses but what law enforcement is doing during the suspect's detention." *Young*, 99 F.4th at 1150.

Traffic stops are typically characterized as investigatory detentions and are considered "valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." *United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995). According to the "collective knowledge doctrine," an officer conducting a traffic stop does not need to have reasonable suspicion herself if "[another] officer having probable cause or reasonable suspicion instructs [her] to act, even without communicating all of the information necessary to justify the action." *United States v. Latorre*, 893 F.3d 744, 753 (10th Cir. 2018) (quoting *United States v. Whitley*, 680 F.3d 1227, 1234 (10th Cir. 2012)). Moreover, once a valid traffic stop has been initiated, an officer may request the suspect's driver's license and vehicle registration, in addition to running a computer check and issuing a citation. *United States v. Reynolds*, 729 F. App'x 639, 643 (10th Cir. 2018).

Here, Plaintiff alleges that Defendant Byrnes "made an unlawful seizure of [Plaintiff] when she ordered him to freeze after not having observed the alleged traffic violation at-issue, nor did she have any reason to believe [Plaintiff] had just committed a felony or was about to commit a felony."[11] (Docket No. 17 at 6). However, Plaintiff also claims Defendant Byrnes took "the

---

[11] In his response to Defendant Brynes' Motion, Plaintiff seemingly argues Defendant Byrnes did not have jurisdiction to issue him the tickets because the traffic incident occurred in Glenpool. (Docket No. 27 at 4). In *Swanson v. Town of Mountain View*, the Tenth Circuit "'held that an extra-jurisdictional traffic stop based on an observed traffic violation d[id] not constitute a Fourth Amendment violation, despite the fact that the stop violated state law.'" 577 F.3d 1196, 1202

unsworn words" of "an off-duty buddy" as the basis for issuing him a ticket. *Id.* at 6. Therefore, according to Plaintiff's own assertions, Defendant Byrnes issued him the ticket after being informed by an off-duty officer and eyewitness that Plaintiff had driven recklessly in violation of Oklahoma law. Pursuant to the "collective knowledge doctrine," the off-duty officer involved in the traffic incident had reasonable suspicion to believe a traffic violation occurred and subsequently imputed that knowledge to Defendant Byrnes. What is more, Plaintiff alleges that he admitted to Defendant Byrnes directly that he had in fact "swerved into the slow-lane" while operating his vehicle. (Docket No. 17 at 4). Thus, the Court finds Plaintiff has failed to allege facts indicating Defendant Byrnes' stop was unjustified. As such, Plaintiff has insufficiently pled a constitutional violation via unreasonable seizure and Defendant Byrnes is thus entitled to qualified immunity as to Plaintiff's first claim.

As to Plaintiff's third claim of excessive detention, Plaintiff alleges Defendant Byrnes "used excessive detention when she took the better part of an hour or more to run a simple license check and to issue a standard two-page citation." (Docket No. 17 at 9). As stated above, the length of Plaintiff's detention in and of itself does not necessarily render it unreasonable as long as Defendant Byrnes' actions served the ultimate purpose of the stop.[12] According to the Amended

---

(quoting *United States v. Gonzales*, 535 F.3d 1174, 1181–83 n.2 (10th Cir. 2008)). This was because the "federal test for determining the validity of a traffic stop simply requires [a court] to determine whether a traffic violation has occurred . . . . It does not require an examination of a state law or interest, but focuses instead on whether the stop was reasonable under the circumstances." *Gonzales*, 535 F.3d at 1183. Therefore, Plaintiff's argument fails, regardless of any possible jurisdictional issue.

[12] Defendant Byrnes references certain Sapulpa Police Department call logs to dispute Plaintiff's allegation that his detainment lasted approximately an hour. (Docket No. 23 at 21) (referencing Docket No. 21-1). Plaintiff argues that consideration of the logs is inappropriate at the motion to dismiss stage. (Docket No. 27 at 3). Although "facts subject to judicial notice, such as matters of public record, [including call logs,] may be considered without triggering the conversion of a Rule 12(b)(6) motion to dismiss to a Rule 56 motion for summary judgment[,]" *Torres v. White*, No. 08-

Complaint, Plaintiff's interaction with Defendant Byrnes began as a consensual encounter. (Docket No. 17 at 4). Once Defendant Byrnes informed Plaintiff of her intention to run his driver's license and plate, he inquired whether he was being detained. *Id.* at 4–5. The encounter then became an investigative stop once Defendant Byrnes allegedly told Plaintiff "to freeze." *Id.* at 5. However, absent from Plaintiff's Amended Complaint are allegations that Defendant Byrnes acted in any way inconsistent with the purpose of the stop, *i.e.*, to issue Plaintiff a ticket for reckless driving and, upon further investigation, an additional ticket for a suspended driver's license. All that Plaintiff alleges is that other unidentified officers congregated around Defendant Byrnes' vehicle and "laughed, pointed, and mocked [Plaintiff.]" (Docket No. 17 at 5). There are no allegations indicating Defendant Byrnes participated in such behavior, only that she "complicity [*sic*] failed to interject." *Id.* at 10. Therefore, the Court finds Plaintiff has insufficiently pled a constitutional violation via excessive detention. As such, Defendant Byrnes is entitled to qualified immunity as to Plaintiff's third claim.

   b.   *False Arrest Claim*

   As mentioned herein, there are two types of police-citizen encounters which implicate the Fourth Amendment—investigative detentions (or *Terry* stops) and arrests. *See Hemry*, 62 F.4th at 1253. Routine traffic stops are "'more analogous to an investigative detention than a custodial arrest,'" *Montgomery v. Brukbacher*, No. 21-1073, 2021 WL 4074358, at *3 (10th Cir. Sept. 8, 2021) (quoting *United State v. Bradford*, 423 F.3d 1149, 1156 (10th Cir. 2005)), and "[i]t is well settled that as part of a lawful traffic stop, the Fourth Amendment authorizes an officer, among other things, 'to issue a citation.'" *Id.* (quoting *United States v. Morgan*, 855 F.3d 1122, 1126 (10th

---

CV-196-JHP-FHM, 2009 WL 37617, at *1 (N.D. Okla. Jan. 6, 2009), the Court did not find it necessary to consider them here. Thus, the concerns raised by Plaintiff are not at issue.

Cir. 2017)).  On the other hand, "an arrest is a form of Fourth Amendment seizure characterized by the intrusive or lengthy nature of the detention." *Morris v. Noe*, 672 F.3d 1185, 1192 (10th Cir. 2012) (citation omitted).  "A detention ceases to be a *Terry* stop and becomes an arrest if it continues for an excessive time or closely resembles a traditional arrest." *Id.* (citing *Hiibel v. Sixth Judicial Dist. Ct. of Nevada*, 542 U.S. 177, 186 (2004)); *see also United States v. Shareef*, 100 F.3d 1491, 1507 (10th Cir. 1996) ("[A]n unreasonable level of force transforms a *Terry* detention into an arrest requiring probable cause.").  If a seizure is characterized as a full arrest, it must be supported by probable cause. *Fogarty v. Gallegos*, 523 F.3d 1147, 1158–59 (10th Cir. 2008).  Thus, "[i]n the context of a false arrest claim, an arrestee's constitutional rights were violated if the arresting officer acted in the absence of probable cause that the person had committed a crime." *Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012).

In his second claim for relief, and in conjunction with allegations of malicious prosecution, Plaintiff alleges a § 1983 claim for false arrest.  (Docket No. 17 at 8–9.)  He contends Defendant Byrnes issued him citations for driving under suspension and reckless driving and told him to "sign here, it's not an admission of guilt, just that you'll promise to appear so I don't have to arrest you." *Id.* at 5.  Although most of the allegations specific to a false arrest claim are leveled against the City of Sapulpa and not Defendant Byrnes, Plaintiff does allege that Defendant Byrnes issued a "sham ticket," as she admittedly "never witnessed [Plaintiff] driving a vehicle a day in her life." *Id.* at 8.  He further asserts that "[a]s a direct and proximate result of Defendants' intentional and/or reckless actions, Plaintiff suffered a false arrest in the form of a citation[.]" *Id.* at 9.

Plaintiff's false arrest claim appears to be based upon the issuance of the traffic citations by Defendant Byrnes.  However, the Supreme Court and Tenth Circuit have specifically rejected the idea that the issuance of a citation transforms a routine traffic stop into a formal arrest.  In

*Martinez v. Carr*, 479 F.3d 1292 (10th Cir. 2007), the Tenth Circuit addressed the issue, noting that "[t]he Supreme Court rejected the state's argument that the issuance of a citation transformed a routine traffic stop into something of a significantly graver magnitude and held that, even after the issuance of a citation, "'a routine traffic stop . . . is more analogous to a so-called *Terry* stop . . . than to a formal arrest.'" *Id.* at 1296 (quoting *Knowles v. Iowa*, 525 U.S. 113, 117 (1998)).  Based upon *Knowles*, the *Martinez* court concluded that "[t]he fact that Mr. Martinez could have been arrested does not convert the issuance of a citation into an arrest and neither does the fact that he had to sign the citation in order to avoid arrest." *Id.*  The *Martinez* court reasoned that as in *Knowles*, "Officer Carr did not qualitatively alter the nature of Mr. Martinez's preexisting detention simply by issuing a citation, even under threat of jail if the citation was not accepted." *Id.*; *see also Montgomery*, 2021 WL 4074358, at *3 (relying upon *Martinez* and *Knowles* and finding that the issuance of the citation did not alter the nature of the detention, as the officer's "issuing of a citation [did not] exceed[] the scope of the investigative stop or r[i]se to the level of an arrest (of any form)").

Moreover, as discussed herein with regard to Plaintiff's seizure and detention claims, the investigatory stop did not exceed the scope or duration requirements to transform Plaintiff's seizure and subsequent detention into a full arrest.  Additionally, the Amended Complaint lacks allegations of actions by officers that rise to the level of intrusiveness necessary to transform the stop into an arrest.  Further, to the extent Defendant Byrnes' issuance of the citations to Plaintiff can somehow be construed as an arrest, Plaintiff would have to show a lack of probable cause to succeed on his false arrest claim.  However, the only allegations included in the Amended Complaint that arguably suggest a lack of probable cause are the allegations that Defendant Byrnes did not witness the traffic violation.  (Docket No. 17 at 8).  As previously discussed herein,

Defendant Byrnes could rely on information from other law enforcement officers to support her issuance of the citations to Plaintiff. *See Albright v. Rodriguez*, 51 F.3d 1531, 1536 (10th Cir. 1995) ("Officers may rely on information furnished by other law enforcement officials to establish reasonable suspicion and to develop probable cause for an arrest.") (internal and external citations omitted).

Accordingly, the Court finds Plaintiff has failed to allege facts supporting a claim for false arrest. Defendant Byrnes is therefore entitled to qualified immunity as to Plaintiff's second claim.

      *c. Civil Conspiracy Claim*

The Tenth Circuit recognizes claims of "conspiracy to deprive a plaintiff of a constitutional or federally protected right under color of state law" under § 1983. *Bledsoe v. Carreno*, 53 F.4th 589, 609 (10th Cir. 2022). To sufficiently state a § 1983 conspiracy claim, a plaintiff must allege specific facts "demonstrat[ing] the public and private actors reached agreement upon 'a common, unconstitutional goal,' and took 'concerted action' to advance that goal." *Janny v. Gamez*, 8 F.4th 883, 919 (10th Cir. 2021) (quoting *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1126 (10th Cir. 2000)). Further, a plaintiff must "make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008). However, conclusory allegations of conspiracy will not suffice when stating a § 1983 conspiracy claim. *Frasier v. Evans*, 992 F.3d 1003, 1024 (10th Cir. 2021).

To support his conspiracy claim, Plaintiff alleges that Defendant Byrnes and the other unidentified officers present "verbally conspired" to unlawfully seize and excessively detain him, in addition to conspiring "to lie, and falsely issue a sham criminal summons[.]" (Docket No. 17 at 10, 11). As discussed above, the Court finds Plaintiff failed to sufficiently plead claims of

unlawful seizure and excessive detention.  Therefore, because Plaintiff has not alleged facts sufficient to support an underlying "common, unconstitutional goal," he cannot adequately allege a § 1983 conspiracy claim.  Thus, Defendant Byrnes is entitled to qualified immunity as to Plaintiff's fourth claim.

    2.  *Whether Plaintiff Plausibly Alleged Any Clearly Established Rights*

    Notably, Plaintiff failed to respond to or address Defendant Byrnes' claim of qualified immunity.  (*See* Docket No. 27).  "Although Plaintiff does not need to find a case with an identical factual situation, he still must show legal authority which makes it 'apparent' that 'in the light of pre-existing law' a reasonable official . . . would have known that [the conduct in question violated the constitutional right at issue.]"  *Swanson*, 577 F.3d at 1200 (quoting *Green v. Post*, 574 F.3d 1294, 1300 (10th Cir. 2009).  By not responding to Defendant Byrnes' qualified immunity defense, Plaintiff failed to identify any legal authority supporting his claims that Defendant Byrnes violated his constitutional rights.  And, as discussed above, the Court has not identified any such authority.  Therefore, Plaintiff has failed to sufficiently allege any violation of his constitutional rights and that those rights were clearly established.

## D.  Leave to Amend

    Federal Rule of Civil Procedure 15(a)(1) provides that "[a] party may amend its pleading once as a matter of course no later than . . . 21 days after serving it, or . . . if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."  Moreover, Rule 15(a)(2) provides that "[i]n all other cases, a party may amend its pleading only with the party's written consent or the court's leave" and "[t]he court should freely give leave when justice so requires."  However, when a party fails to file a formal motion, "'normally a court need not grant

leave to amend[.]'" *Albers v. Bd. of Cty. Comm'rs of Jefferson City*, 771 F.3d 697, 706 (10th Cir. 2014) (quoting *Calderon v. Kansas Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999)).

Here, Plaintiff previously sought to amend the original Complaint after Defendants City of Sapulpa and Sapulpa Police Department filed a motion to dismiss. (*See* Docket Nos. 9, 11). The Court granted Plaintiff's motion, and he filed an Amended Complaint. (Docket Nos. 16, 17). However, upon the filing of Defendant Brynes' Motion to Dismiss (Docket No. 23), Plaintiff did not seek leave to file a second amended complaint, instead making a generic request to amend in his response in opposition to Defendant Byrnes' Motion. (Docket No. 27). Specifically, in the conclusion paragraph of his response, Plaintiff "requests leave to file a Second Amended Complaint" if the Court finds his Amended Complaint is "defective in some manner." *Id.* at 4 (emphasis omitted). His sole explanation is "because a dismissal without prejudice would be tantamount to a dismissal with prejudice since the statute of limitations expired on December 6, 2024." *Id.* (emphasis omitted).

Plaintiff's request to amend in the response does not constitute a formal motion and fails to describe for the Court and Defendant Byrnes the particular nature of any proposed amendment. *See* Fed. R. Civ. P. 7(b)(1) (requiring that a motion "be in writing," "state with particularity the grounds for seeking the order[,]" and "state the relief sought."); *see also Albers*, 771 F.3d at 706 ("[A] bare request to amend in response to a motion to dismiss is insufficient to place the court and opposing parties on notice of the plaintiff's request to amend and the particular grounds upon which such a request would be based.") (citing *Glenn v. First Nat'l Bank in Grand Junction*, 868 F.2d 368, 371 (10th Cir. 1989)); *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1282–83 (10th Cir. 2021) (finding a single sentence included in Plaintiff's response brief to defendant's motion

to dismiss requesting an opportunity to amend did not constitute a "cognizable motion," and the district court did not abuse its discretion when it declined to grant leave to amend and granted Defendant's motion to dismiss with prejudice).  If Plaintiff believed an amendment was appropriate after Defendant Byrnes filed her motion to dismiss, he should have sought leave to amend at that time.  *See Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1236 (10th Cir. 2020) ("When a party faces a motion to dismiss and it believes that it can overcome objections with an amendment to the pleading, it should seek leave to amend at that time. Efficient adjudication of disputes requires that the party present its best effort to state a claim before the court addresses the motion to dismiss.").  Accordingly, the Court denies Plaintiff's informal request for leave to amend.

## Conclusion

For the reasons discussed herein, Defendant Byrnes' Motion to Dismiss Amended Complaint and Brief in Support (Docket No. 23) is hereby **GRANTED**.  Therefore, the claims against Defendant Byrnes are **DISMISSED WITH PREJUDICE**.

IT IS SO ORDERED this 24th day of April, 2025.

_____

MARK T. STEELE, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT